23264

The STATE, Respondent v. Stephen Pierce JACKSON, Appellant.

(396 S.E. (2d) 101)

Supreme Court

*John R. Clarke* and *William Isaac Diggs,* North Myrtle Beach, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Norman Mark Rapoport,* Columbia, and *Sol. James O. Dunn,* Conway, *for respondent.*

Heard May 23, 1990.

Decided Sept. 17, 1990.

TOAL, Justice:

The sole issue in this case is whether Jackson's due process rights were violated when he was prosecuted for driving

under the influence (DUI) after the charges had been dismissed and the videotape had been destroyed. We find that they were and therefore reverse.

## FACTS

On September 17, 1988, Stephen Pierce Jackson was arrested for DUI. He was taken to the police department where he was videotaped while performing field sobriety tests. He was also given a breathalyzer test.

Thereafter, the Assistant Solicitor conducted a pretrial conference with Jackson's attorney. After viewing the tape, the Assistant Solicitor dismissed the case. He notified the person in charge of the tapes at the police department in October or November 1988 of the dismissal of the charges. In January 1989, Jackson was notified that the charges would be prosecuted. The videotape was erased in March 1989. In addition, the Solicitor's office lost the original breathalyzer report.

The trial judge ordered that the trial proceed in spite of the missing evidence. Jackson was convicted of DUI, second offense. He was sentenced to one year, suspended upon the performance of ten days public service followed by two years probation. He was also fined $250 and ordered to pay $50 for the breathalyzer test.

## DISCUSSION

Jackson contends that it was a violation of his due process rights to prosecute him after the charges were dismissed and evidence was destroyed. His argument is based upon the principle that defendants are to be given a meaningful opportunity to present a complete defense. To protect this right, the United States Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 34140, 3446, 73 L. Ed. (2d) 1193, 1203 (1982).

In this regard, defendants have the right to request and obtain from the prosecution evidence that is material to the guilt of the defendant or relevant to the punishment to be imposed. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. (2d) 215 (1963). Even absent a request, prosecutors have a constitutional duty to give the defendant exculpatory evi-

dence which would raise a reasonable doubt about his guilt. *United States v. Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. (2d) 342 (1976).

In *California v. Trombetta,* 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. (2d) 413 (1984), the Supreme Court held that the State's failure to retain breath samples for the defendants in a DUI case was not a due process violation. The Court reasoned that the officers were acting in good faith and in accord with their normal practice when the breath samples were discarded. After the intoxilyzer was administered and results were obtained, the officers normally disposed of the samples. The Court also found that the defendant failed to prove that the evidence was "material," which means that the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

In *Arizona v. Youngblood,* 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. (2d) 281 (1988), the Court held that the defendant must prove bad faith on the part of the police in order for the destruction of potentially useful evidence to constitute a denial of due process. Specifically, the police must know of the exculpatory value of the evidence before it is destroyed. "The presence or absence of bad faith by the police for purposes of Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." 109 S. Ct. at 337, nt.

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

109 S. Ct. at 337.

In *Youngblood,* the police failed to preserve semen samples. The Court found that bad faith on the part of the police was not even suggested because the defendant failed to show that the police knew the evidence was of exculpatory value.

In the case at bar, the videotape was clearly "material." The exculpatory value was apparent before its destruction because one assistant solicitor was willing to drop the charges because of it. In addition, Jackson had no other evidence and could not obtain evidence of comparable value. Although the destruction of the tape was explained to the jury, the value of the tape could not be replaced.

The State contends that the videotape was erased in accord with the normal practice and therefore no due process violation occurred. It is our opinion, however, that the peculiar facts of this case require a reversal of the conviction. Here, a conscious decision was made by the Solicitor's office to dismiss the charges. This decision was discussed with the defendant. It was because of this decision that the tape was ordered to be erased.

For the reasons discussed above, the lower court is

Reversed.

HARWELL, CHANDLER and FINNEY, JJ., concur.

GREGORY, C.J., dissenting in separate opinion.

GREGORY, Chief Justice, dissenting:

I respectfully dissent. The record in this case is devoid of any evidence the Solicitor's office "knew" the videotape had any exculpatory value. There is nothing in the record to support the majority's assumption the assistant solicitor was willing to drop the charges "because of" the videotape. The critical inquiry under *Youngblood* is whether a criminal defendant can show bad faith in the State's failure to preserve "potentially useful" evidence. 488 U.S. at —, 109 S. Ct. at 337, 102 L. Ed. (2d) at 289. Because I find no bad faith on the part of the State in its routine destruction of the videotape, I would affirm.