**Shawntell CURRY, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 03–4363.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 24, 2004.

Decided March 8, 2005.

Damon Leichty, Barnes & Thornburg, South Bend, IN, for Petitioner–Appellant.

Brian R. Havey, Office of the United States Attorney, Chicago, IL, for Respondent–Appellee.

Before POSNER, EASTERBROOK, and WOOD, Circuit Judges.

ORDER

In 1998, Shawntell Curry was sentenced on five counts of conspiring to interfere with commerce through robbing several banks and a motel located in northern Illinois and southern Wisconsin, in violation of the Hobbs Act, 18 U.S.C. § 1951. This court affirmed the convictions and Curry's 295–month sentence on direct appeal. See *United States v. Curry*, 187 F.3d 762 (7th Cir.1999). Curry then filed a timely petition under 28 U.S.C. § 2255, in which he claimed among other things that the government had failed to disclose

68

material evidence favorable to his defense, in violation of its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court found that there was no reasonable probability that the evidence in question would have made a difference to the outcome of the case and thus that no *Brady* violation had occurred. Because Curry's other points were equally without merit, the district denied the § 2255 petition. We affirm.

We review only the facts pertinent to Curry's *Brady* claim. Briefly, they relate to his convictions for the robbery of the M&I Bank in Oregon, Wisconsin, on January 27, 1997, and for the robbery of the Budgetel Motel in Matteson, Illinois, on February 20, 1997. Curry and an associate, John Q. Pulley, worked together on the M&I robbery; Pulley pleaded guilty and agreed to cooperate with the government. The witness who is the focus of Curry's *Brady* claim is Rae Williams–Anderson, Curry's cousin, who testified for the government about the M&I robbery. Williams–Anderson lived in an apartment approximately half a block from the M&I Bank. She testified that Curry and Pulley arrived unexpectedly at her apartment on the morning of January 27, 1997. Based on her recollection of their appearance at that time, Williams–Anderson identified them as the two robbers depicted in photographs taken by the bank's surveillance cameras. Williams–Anderson also testified about statements Curry had made to her, bragging about his robbery of the Budgetel.

Unbeknownst to Curry at the time of trial, Williams–Anderson had contacted the Wisconsin authorities about a possible reward for helping to apprehend Curry. This is enough, at a minimum, to trigger a *Brady* inquiry. In *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286

(1999), the Supreme Court summarized the three components of a *Brady* violation:

The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. *Id.* at 281–82. Like the district court, we assume that Curry's new evidence satisfies the first of these criteria, because it could have been used to impeach Williams–Anderson's testimony. The evidence also meets the second part of the test. As the district court pointed out, this information was in the possession of the Wisconsin authorities, and it was not turned over to the defendant. Even though the U.S. attorneys represented that they had no knowledge about Williams–Anderson's actions, that is beside the point for *Brady* purposes (as the Government acknowledges).

As is often the case, the serious question is whether Curry suffered any legally cognizable prejudice from the suppression, or, put a bit differently, whether our confidence in the outcome of this trial is undermined by the fact that this evidence was not disclosed. See *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), quoting *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court held that "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record." *Id.* at 112. That is exactly what the district court did, holding as follows:

In this instance, the evidence against Curry was overwhelming. Not only did [Williams-] Anderson testify against

Curry but so did all of his Co–Defendants, as well as the bank staff. The mere failure to disclose the fact that [Williams-] Anderson inquired about the possibility of a reward for her help, does not change the result of the proceeding. Curry cross-examined [Williams-] Anderson and attempted to impeach her credibility. Curry was not convicted merely on the testimony of [Williams-] Anderson. Again, various other witnesses, and even Co–Defendants testified against Curry on this matter.

On appeal, Curry stresses that the materiality standard under *Brady* does not require him to prove that the suppressed evidence definitely would have led to a different outcome; it merely requires a reasonable probability of a different result. He portrays Williams–Anderson as the "key" to the conspiracy count in the case, and he urges us to find that the evidence of her interest in the reward would severely have undermined her credibility in the eyes of the jury. He also points out the fact that Williams–Anderson's account of her encounter with Curry after the M&I robbery became more detailed over time. Taken as a whole, he argues that this case is just like *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), in which the Supreme Court held that petitioner Delma Banks had shown a *Brady* violation where the prosecution failed to disclose that one witness was a paid police informant, that another had been coached extensively by prosecutors, and that the informant had lied on the stand.

*Banks,* however, did not change the legal contours of the *Brady* rule. It simply applied that rule to a particularly egregious set of facts. What matters here is the materiality of the undisclosed evidence to Curry's case, in the context of the record as a whole. As the government points out in its brief, and as we found on direct appeal, the jury's verdict was strongly supported by the evidence. Williams–Anderson was just one of a number of witnesses who testified. She was not an eye-witness nor a participant in any of the robberies, unlike some of the other witnesses. We are satisfied that the district court did not err when it concluded that there was no reasonable probability, as defined in cases like *Kyles* and *Bagley,* that this evidence would have made a difference.

The judgment of the district court is AFFIRMED.