## UNITED STATES OF AMERICA

v.

## Brigette FERRANTE Defendant.

## No. EP–05–CR–277–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 27, 2006.

---

504

John P. Calhoun, Asst. Federal Public Defender, El Paso, TX, Defendant.

William F. Lewis, Jr., U.S. Attorneys, Assistant U.S. Attorney, El Paso, TX, for Plaintiff.

### ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL AS TO COUNT 2 ONLY

MARTINEZ, District Judge.

On this day, the Court considered Defendant Brigette Ferrante's ("Ferrante") "Motion for New Trial as to Count 2 Only and Brief in Support" ("Motion"), filed on January 27, 2006 and the Government's "Response to Defendant's Motion for New Trial as to Count Two Only," filed on February 3, 2006 in the above-captioned cause. After due consideration, the Court is of the opinion that Ferrante's Motion should be denied for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 9, 2005, Ferrante was charged with the following federal offenses: (1) assaulting a federal officer using a dangerous weapon while the officer is engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b) ("Count 1"); (2) assaulting a federal officer inflicting bodily injury while the officer is engaged in the performance of official duties, in violation of 18 U.S.C. § 111(a)(1) and (b) ("Count 2"); and (3) assaulting a person using a dangerous weapon with intent to do bodily harm without just cause or excuse on land acquired for the use of the United States, in violation of 18 U.S.C. § 113(a)(3) and 18 U.S.C. § 7 ("Count 3"). The Court conducted a bench trial on November 16, 2005. On November 21, 2005, the Court entered its Findings of Fact and Conclusions of Law, finding Ferrante guilty of Count 1 and Count 2. The Court found Ferrante not guilty of Count 3.

On January 27, 2006, Ferrante filed a motion requesting a new trial as to Count 2 only pursuant to Federal Rule of Criminal Procedure 33(b). To support her motion, Ferrante cites the discovery of new evidence. Specifically, Ferrante recently obtained the medical records of Officer Scott Bittner ("Bittner"), a Military Police ("MP") officer whom the Court found Ferrante struck with her car while Bittner was on duty at William Beaumont Army Medical Center ("WBAMC") on January 14, 2005. To support a conviction under Count 2, the Government was required to prove the following elements: (1) that Ferrante forcibly assaulted the person described in the indictment; (2) that the person assaulted was a federal officer who was then engaged in the performance of

his official duty, as charged; (3) that Ferrante did such acts intentionally; and (4) that in doing such acts Ferrante inflicted bodily injury. Ferrante argues that Bittner's medical records, which document his medical appointments after being struck by Ferrante, cast sufficient doubt on the fourth required element, namely, whether Ferrante inflicted bodily injury, to justify a new trial. Ferrante also argues that the Government's failure to turn over Bittner's medical records constitutes a Due Process violation. The Court will address each argument in turn.

## II. DISCUSSION

### A. Motion for New Trial Based on Newly Discovered Evidence

#### 1. Standard

■ Federal Rule of Criminal Procedure 33 allows a defendant to file a motion for a new trial grounded on newly discovered evidence within three years after the verdict, and the trial court may grant a new trial "if the interest of justice so requires." FED. R.CRIM. P. 33. Motions for a new trial "are disfavored and are reviewed with great caution." *United States v. Gresham*, 118 F.3d 258, 267 (5th Cir. 1997). In order to merit a new trial based on newly discovered evidence, a defendant must prove the following:

(1) the evidence is newly discovered and was unknown to the defendant at the time of trial;

(2) the failure to discover the evidence was not due to a lack of diligence by the defendant;

(3) the evidence is not merely cumulative or impeaching;

(4) the evidence is material; and

(5) the evidence if produced at a new trial would probably produce an acquittal.

*United States v. Wall*, 389 F.3d 457, 467 (5th Cir.2004). A defendant must satisfy all five requirements (known as the *Berry* test) to justify a new trial. *Id.*

#### 2. Application of the Berry Test

##### a. First Berry Factor: Evidence Unknown at Time of Trial

Under the first *Berry* factor, the parties agree that Bittner's medical records were unknown to Ferrante at the time of trial. Rather, both the Government and Ferrante became aware of Bittner's medical records after trial in preparation for Ferrante's sentencing hearing. Thus, Ferrante satisfies the first *Berry* factor.

##### b. Second Berry Factor: Due Diligence

■ With respect to the second *Berry* factor, Ferrante has not shown that her failure to discover the evidence was not due to a lack of diligence. Ferrante was on notice that bodily injury was an element of Count 2 and that Bittner's medical records could be relevant to her case.[1] Yet, Ferrante never made an attempt to obtain Bittner's medical records or requested that the Court issue a subpoena.

Ferrante argues that any attempts to obtain Bittner's medical records would have been futile because the Federal Privacy Act prevented her from obtaining Bittner's records. However, an exception to the Privacy Act provides that an agency must disclose records "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11). Furthermore, Federal Rule of Criminal Procedure 17(c)(1) allows a court to issue a subpoena ordering a witness "to produce any books, papers, documents, data, or other objects the subpoena designates." FED. R.CRIM. P. 17(c)(1).[2] The week prior to Ferrante's

---

**1.** Count 2 was included in Ferrante's original indictment, filed on February 9, 2005.

**2.** Ferrante also cites the Health Insurance Portability and Accountability Act of 1996,

bench trial, the Court issued a subpoena duces tecum (Docket No. 76) requiring the custodian of medical records for WBAMC to appear at trial and to bring Ferrante's medical and psychological/psychiatric records with him/her to trial. Ferrante's attorney concedes that the Army complied with this request. Letter from Attorney John P. Calhoun to the Court (Feb. 17, 2006). The fact that the Army turned over Ferrante's records contradicts Ferrante's unsupported contention that seeking to obtain Bittner's medical records would have been futile. Furthermore, Ferrante did not request a continuance before trial to obtain additional time to seek the records. Therefore, the Court concludes that Ferrante has not shown that her failure to obtain Bittner's medical records was not due to a lack of due diligence. Although Ferrante has failed to satisfy the second *Berry* factor, the Court will continue to analyze the other factors for the sake of thoroughness.

### c. *Third* Berry *Factor: Evidence Not Cumulative or Impeaching*

■ With respect to the third *Berry* factor, Ferrante argues that Bittner's medical records serve two purposes. First, she argues that they cast doubt on whether Bittner suffered a bodily injury. Second, she argues that they impeach Bittner's credibility because they tend to contradict portions of his testimony. To the extent Ferrante seeks to use Bittner's medical records to impeach Bittner's credibility, "[i]mpeachment testimony normally is not a basis for granting a motion for a new trial." *Wall*, 389 F.3d at 470. Therefore, Ferrante only satisfies the third *Berry* factor to the extent she argues that Bittner's medical records are material to whether Bittner suffered bodily injury as a result of Ferrante's actions.

### d. *Fourth* Berry *Factor: Materiality*

■ With respect to the fourth *Berry* factor, Bittner's medical records are material to whether Bittner suffered bodily injury, an element of Ferrante's conviction under Count 2. Thus, Ferrante satisfies the fourth *Berry* factor.

### e. *Fifth* Berry *Factor: Weight of New Evidence*

■ With respect to the fifth *Berry* factor, Bittner's medical records are material only to the issue of whether Ferrante inflicted bodily injury upon Bittner, a requirement which the Court found that the Government proved beyond a reasonable doubt in convicting Ferrante of Count 2. The term "bodily injury" means "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. n. 1(B) (2004).

A review of the evidence supporting Bittner's bodily injury convinces the court that there was ample evidence of bodily injury when measured against the newly discovered evidence. Abundant trial testimony supported the Court's conclusion that Ferrante's actions resulted in bodily injury beyond a reasonable doubt. Bittner testified that (1) Ferrante hit his left knee with her car between the right front wheel well and the front of her car, knocking his left knee straight from a slightly bent position; (2) Bittner, in fear of being run over by Ferrante's car, put both hands on the hood of the car as she drove with him on the car; (3) both Bittner's feet came off

---

P.L. 104–91, as an impediment to her obtaining Bittner's medical records. Ferrante has not shown, nor does the Court's own inspection reveal, how this statute would have prevented WBAMC from turning over Bittner's medical records if Ferrante had sought a Court order.

the ground, and he was about 3 to 4 inches from the front windshield of the car before rolling left and falling to the ground; (4) after Ferrante had been apprehended, Bittner went to the emergency room at WBAMC to have his knee examined; (5) Bittner experienced pain in his left knee after being hit by Ferrante; and (6) Bittner continues to suffer pain in his left knee and is restricted from performing his duties as a soldier.

However, the Court's conclusion that Bittner suffered a bodily injury was not based solely on Bittner's testimony. Rather, Bittner's testimony was corroborated by several other witnesses. Three other MP officers working on January 14, 2005 saw a car hit Bittner, Bittner roll up on top of the car, and Bittner roll off of the car.[3] Additionally, another MP officer testified that he saw a dent on a car later identified as Ferrante's on the right side of the vehicle where all three officers saw Ferrante's car hit Bittner.

The most substantial evidence Ferrante attached to her Motion is a portion of Bittner's medical records indicating that Bittner had pain in his left knee prior to being struck by Ferrante's car on January 14, 2005.[4] However, nothing in Bittner's medical records casts doubt on the Court's decision that Bittner suffered a bodily injury on January 14, 2005 as a result of being struck by Ferrante.[5] No evidence contradicts the Court's findings that Ferrante struck Bittner with her car with sufficient force to dent the car, that Bittner experienced pain as a result, and that

3. First, Bittner's MP partner, Jose Elias Gamboa III ("Gamboa") testified that he saw Ferrante drive off from her parking space, thereby striking Bittner with the right front side of her vehicle. Gamboa also testified that he accompanied Bittner to the emergency room at WBAMC to have Bittner's knee examined. Second, Jason Michael Schanbacher ("Schanbacher") was an MP officer working on the evening of January 14, 2005. Schanbacher testified he received a radio call to proceed to WBAMC to assist Bittner and Gamboa. Thereafter, he saw Ferrante's car suddenly pull away, Bittner go up on the car's hood, and Bittner fall off. Third, Victor James Hendricks ("Hendricks") was an MP officer working on the evening of January 14, 2005. Hendricks testified that he and his partner responded to a call for assistance and went to the WBAMC parking lot to assist Bittner and Gamboa. Hendricks testified that he noticed that there was a person on the hood of the car as it sped away, and that the person rolled off.

4. First, a medical report prepared by Lily Ramirez on August 2, 2005 states that Bittner has "chronic left knee pain." Mot., Ex. B. Additionally, a report prepared on August 30, 2005, also by Lily Ramirez, records that Bittner stated that he "has had left knee pain for past 2 years." *Id.*

5. Prior problems with Bittner's left knee do not preclude the possibility of bodily injury resulting from being hit by Ferrante's car. In addition, the great weight of Bittner's medical records indicate that Bittner had right knee pain for two years and left knee pain beginning on January 14, 2005. First, the record of Bittner's January 14, 2005 emergency room visit indicates a left knee injury, including a diagram indicating an injury to Bittner's left knee causing mild pain and tenderness. Mot., Ex. B. Second, Bittner's next record of a medical appointment, which took place on July 11, 2005, states that the reason for his hospital visit was "knee tissue injury left (new)." *Id.* Third, the November 7, 2005 medical record states as Bittner's "history of present illness" that he has "[n]o history of direct trauma right knee was hit in left knee by car Jan 05." In addition, the August 2, 2005 report is internally inconsistent. It first states that the "Reason for Order" was "chronic right knee pain … new left knee pain." *Id.* It then states the "Reason for Order" was that Bittner was "hit by car in left knee." *Id.* Thus, the statement later in the August 2 document that Bittner had "chronic left knee" pain is most likely a clerical error. *Id.* Furthermore, the August 30 document was also prepared by Lily Ramirez. *Id.* Therefore, it is likely that the August 30 document was a result of the earlier confusion created by the August 2 record. *Id.*

he sought medical care for treatment of his injury. Therefore, the Court concludes that Ferrante has not shown that the evidence if produced at a new trial would probably produce an acquittal.[6] Thus, Ferrante fails to satisfy the fifth *Berry* factor in addition to the third, and the newly discovered evidence does not justify a new trial.

### B. Due Process Violation Based on the Government's Suppression of Evidence

 The rule of *Brady v. Maryland,* 373 U.S. 83, 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), involves "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Ferrante does not dispute that Bittner's medical records were first obtained by the Government from U.S. probation *after* the conclusion of trial and in preparation for Ferrante's sentencing hearing. Moreover, even if the Government had possession of Bittner's medical records prior to trial, to establish a Due Process violation Ferrante would need to prove that "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Agurs,* 427 U.S. at 112, 96 S.Ct. 2392. As discussed above, Bittner's medical records are insufficient to create a reasonable doubt that did not otherwise exist. *See supra* Part II(A)(2)(e) (explaining that the new evidence does not create a reasonable doubt that Ferrante caused Bittner to suffer a bodily injury). Therefore, Ferrante has failed to establish a Due Process violation.

### III.  CONCLUSION

For the aforementioned reasons, Ferrante has failed to prove that the newly discovered evidence warrants a new trial. Ferrante has failed to satisfy the *Berry* factors or to prove a Due Process violation based on the Government's suppression of evidence.

Accordingly, **IT IS ORDERED** that Defendant Brigette Ferrante's "Motion for New Trial as to Count 2 Only and Brief in Support" is **DENIED**.

---

**6.** Ferrante also presents evidence that attempts to cast doubt on Bittner's general credibility. As discussed earlier, impeachment evidence does not normally warrant a new trial. *Wall,* 389 F.3d at 470. Ferrante's attacks on Bittner's testimony, even if they were convincing, are primarily relevant only to the extent of Bittner's injury, not to the fact of bodily injury. Thus, they do not cast sufficient doubt on the Court's conclusion that Ferrante inflicted bodily injury to warrant a new trial.