563 P.2d 320

STATE of Arizona, Appellee,

v.

Thomas R. CAMPBELL, Appellant.

No. 1 CA–CR 2129.

Court of Appeals of Arizona,
Division 1,
Department A.

March 8, 1977.

Rehearing Denied April 8, 1977.

Review Denied May 3, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, and Joseph B. Heilman, Certified Third Year Law Student Under Rule 28(e), for appellee.

Ross P. Lee, Maricopa County Public Defender by Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.

OPINION

HAIRE, Judge.

This appeal presents the question of whether the prosecutor's failure to disclose

discoverable materials, as required by Ariz. R.Crim.Proc., 15.1, so deprived defendant Campbell of a fair trial as to require the reversal of his conviction.

Campbell was arraigned on March 11, 1976 so that, pursuant to Rule 15.1, the deadline date for disclosure by the state should have been 10 days later. The court by minute entry ordered such disclosure, but, despite an April 23rd letter by defendant's attorney to the prosecutor requesting discoverable materials, no disclosures by the state were made.

Defendant was charged with burglary and tried to a jury on May 19 and 20, 1976. The evidence revealed that he had been apprehended, after making an illegal entry through the roof, lying behind the cash register of a pornographic bookstore with a $2 catalog entitled "Sexual Aids & Novelties" open in his hands. The central issue at the trial was his intent: whether he had entered the building intending to commit a theft or felony.

The apprehending police officer testified that the defendant had entered through the roof of the one story building by means of tipping over a cooler and dropping through the vent into the store below [1] and that he appeared to have been drinking when he was apprehended. This officer also testified that although there were coins stacked on the cash register they had not been touched by the defendant. The cash register and surrounding area had been dusted for fingerprints and none belonging to the defendant were found. In fact, nothing in the store appeared to have been disturbed by the defendant in any way except the pamphlet in his hands.

Campbell's sister, and a neighbor of hers, both of whom lived in an apartment building one and one-half blocks from the bookstore, also testified. Both stated that Campbell had been at the sister's apartment just preceding the illegal entry and that he had appeared quite intoxicated when he left.

Other testimony was given by a Mr. Tello, who was a supervising employee of the alarm company. Mr. Tello brought with him a copy of the alarm record for the night in question. This was a record automatically initiated by a time clock when the system was disturbed. This record was given to the guard who responded to the alert by going to the premises, and then made annotations on the card as to the results of his investigation and returned it to the alarm company.[2] The prosecutor offered that part of the card (Exhibit 4) into evidence which established the time the alarm was set off, stating that the rest would be hearsay. Defendant made no objection, and the court advised the prosecutor to mark it as he desired and its admissibility would be discussed later.

Two more witnesses testified, and court was adjourned until the next day. After all the testimony was concluded, the matter of the admissibility of Exhibit 4 was raised by defendant's counsel. The court stated that "the objection to the exhibit will be sustained", that the card would not be admitted at all, because it "contained hearsay", and because "the appropriate part [establishing the exact times of entry] is all in the record.", (having been read by Mr. Tello). At that time defense counsel pointed out that he made no objection to the admission of the card. He further stated that one comment made on the card by the responding guard that the suspect apprehended was on probation, was objectionable, but that he wished the rest of the card admitted because it contained an exculpatory statement. This was that the guard responding to the alarm, Mr. Reuter, had written on the card:

"One male dumped over the cooler on the roof and descended into the premises. *Guard found him lying on the floor be-*

---

1. This entry set off trip wires for an automatic silent alarm system, so that both the police and alarm company were notified and proceeded to the bookstore.

2. This responding guard, a Mr. Reuter, had been listed (by name but not described) as a possible witness by the prosecutor prior to trial but was not subpoenaed or called.

*hind the register reading a book."* (Emphasis added).

The following dialogue ensued:

[Defense counsel]

"MR. THOMPSON: Because, I would like included the statements on this, on the face of the document. There is an exculpatory statement on there.

"THE COURT: Do you object?

[Prosecutor]

"MR. CANTOR: Let me see. Yes, Your Honor, I do. This would be hearsay as to him. We only offered the lower part of the exhibit.

"THE COURT: It is pure hearsay and undocumented.

"MR. THOMPSON: If I may be heard, Your Honor, I had no notice of this item until I saw it offered as an exhibit. Under Brady, I feel we were entitled to that. It is an exculpatory statement. The witness was not called by the State. I would feel the State is obligated to produce that witness, or I would like an opportunity to subpoena that witness and have him come in.

"THE COURT: What witness is it?

"MR. THOMPSON: Mr. Reuter, the Central Alarm man.

"THE COURT: Is he the one that wrote that?

"MR. THOMPSON: The indication that the gentleman gave yesterday was that the information contained on there was supplied by Mr. Reuter, and this would be a regular business entry.

"THE COURT: If this is his information, you did have the opportunity to subpoena Mr. Reuter, did you not?

"MR. THOMPSON: Your Honor, I had no idea that this statement existed until yesterday. And we were in court.

"THE COURT: The exhibit may not be admitted at all. The portion that is offered has already been read in evidence. There is no foundation for the hearsay on any other portion of the exhibit.

Exhibit 4 may be remarked for purposes of identification, but may not be admitted in evidence.

"MR. THOMPSON: May I have a continuance for an opportunity to obtain that witness then, Your Honor?

"THE COURT: Why haven't you done it since you knew about this yesterday and it is now 10:00 o'clock today?

"MR. THOMPSON: We were in trial until 5:00 o'clock, Your Honor. I did not have an opportunity to have a subpoena issued yesterday.

"THE COURT: No. You may not have a continuance now. Both sides have rested, there has been no request for rebuttal, surrebuttal. Both sides have rested."

The trial immediately proceeded to closing arguments.

The only real dispute at the trial was whether an intent to steal could be inferred from the circumstances presented. The prosecutor's closing argument focused very intensely on the idea that defendant's proximity to the cash register when he was found was indicative that he intended to steal the money.

*"Where was he caught?* One place, *right next to the cash register.* He had to stand up on some sort of a device and come around and he was trying to hide then. He didn't try to hide, you notice, in any storage room, or something of that sort. *He just happened to be at the cash register when they came in.* He had nothing to do but freeze and duck down and hope, by some miracle, he wouldn't be caught.

"There is no miracle and he was caught and the facts clearly show his intent, the way he entered was terrible. *He was near the cash register, one foot away from it if he had stood up.*

"They just caught him before he could really get his hands on money and other goodies in the store.

   \*    \*    \*    \*    \*    \*

*He just happens to walk up to where the cash register is,* in all this store, and he thinks, 'Well, that's lovely, here is a nice

soft spot on the floor, *behind the cash register, and he sits down and then he lies down and he starts reading a book. Just a nice soft spot next to the cash register.* That is an insult to your intelligence.

\* \* \* \* \* \*

"I think the problem with this, ladies and gentlemen, is not the fact we all know he broke in there, obviously, I think from the evidence you should know it.

"Counsel admits he broke in there. We don't have to argue that. The facts indicate quite strongly, by strong circumstantial evidence he intended to take something. My God, he had it in his hand. *The fact that he was ducking down and trying to hide shows his guilt feeling.*" (Emphasis added).

The jury found the defendant guilty.

In light of the prosecutor's arguments that the defendant had just "ducked down" after being surprised at the cash register, the possibility that the omitted evidence would have had an effort on the jury is too great to be ignored.

The fact that the guard who first saw Mr. Campbell at the scene of the alleged burglary thought that he was lying down, reading, (not hiding) is relevant to, though certainly not determinative of, the contention that the defendant had entered the building with no intention to steal. On close examination of the record, we cannot say as a matter of law that the omitted evidence would have been merely cumulative. As the facts developed, Mr. Reuter, the guard, and Officer Martinez, the apprehending officer, entered the bookstore simultaneously. Officer Martinez testified that he did not initially see the defendant. Martinez went outside to radio for assistance; Mr. Reuter observed the defendant, as he wrote on the card and would probably have testified, "reading". When Officer Martinez went back into the bookstore the defendant was still lying on the floor with the book. Even though the time difference is relatively short, the fact that defendant was lying behind the register apparently reading when first seen might have indicated to the jurors that he was still reading later, when apprehended, rather than having just "ducked down trying to hide", as the prosecutor argued.

The state's failure to disclose as required by the rules thus resulted in the defendant's being deprived of what may have been significant and helpful evidence in his favor.

■ Clearly, the card was among those documents which the prosecutor intended to use at trial. Rule 15.1 of the Ariz.R.Crim. Proc., required its disclosure:

"Rule 15.1 Disclosure by state

a. *Matters Relating to Guilt, Innocence or Punishment.* No later than 10 days after the arraignment in Superior Court, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within his possession or control:

\* \* \* \* \* \*

(4) A list of all papers, documents, photographs or tangible objects *which the prosecutor will use at trial* or which were obtained from or purportedly belong to the defendant; " (Emphasis added).

The state cannot avoid the rule by arguing that the prosecutor was not himself in physical possession of the card; the prosecutor has an affirmative duty to obtain materials appropriate for disclosure:

"d. *Extent of Prosecutor's Duty to Obtain Information.* The prosecutor's obligation under this rule extends to material and information in the possession or control of members of his staff and of any other persons who have participated in the investigation or evaluation of the case and who are under the prosecutor's control."

These rules of criminal procedure relating to discovery contemplate that a trial will be conducted with full notification to each side. The prosecutor has a duty to familiarize himself with the case he is to try and to make information available to the defendant as early and completely as possible.

*State v. Castaneda*, 111 Ariz. 264, 528 P.2d 608 (1974); Comment, Rule 15.6, Ariz.R. Crim.Proc. We have abandoned the "sporting theory of justice" condemned in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ Defendant, even without his request, was entitled to rely on the discovery provisions in the rules to supply him with enough notice so that he would not be prejudiced in making his defense. Clearly, if the prosecutor had disclosed the card containing Mr. Reuter's statement to the defendant in advance of trial, the defendant could have either laid a proper foundation for admissibility as a business record or called Mr. Reuter to testify as to his observations at the scene. In either case, we cannot hold as a matter of law that the jury's verdict would not have been influenced. The standard was recently stated in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 2401, 2402, 49 L.Ed.2d 342 (1976):

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
> (Footnotes omitted).

Given the facts here, where the defendant was intoxicated, and the money left stacked on the cash register was untouched, there were none of defendant's fingerprints anywhere around the register, nor was there any indication that defendant had disturbed anything on the premises other than the $2.00 book he was apparently reading, the question of whether the defendant's intent to steal was established beyond a reasonable doubt is too close to define the omitted evidence as necessarily of minor importance.

■ We do note that defendant made no motion pursuant to Rule 16.1(b), Ariz.R. Crim.Proc., to compel discovery, but under the circumstances of this case we feel that to put the burden on defendant, with the benefit of hindsight, to guess that the prosecutor might be withholding relevant and exculpatory materials reverses the purpose of the rules requiring that such discovery be made automatically.

The sanctions provided for failing to make discovery in Rule 15.7, Ariz.R.Crim. Proc., are as follows:

"Rule 15.7 *Sanctions*

If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any provisions of this rule or any order issued pursuant thereto, the court may impose any sanction which it finds just under the circumstances, including, but not limited to:

a. Ordering disclosure of the information not previously disclosed.

b. Granting a continuance.

c. Holding a witness, party, or counsel in contempt.

d. Precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; and

e. Declaring a mistrial when necessary to prevent a miscarriage of justice."

The defendant asked for a continuance in order to obtain Mr. Reuter as a witness. The state argues that the failure of the trial court to grant this continuance after both sides had rested was not an abuse of discretion. *State v. Piper*, 113 Ariz. 390, 555 P.2d 636 (1976). But defendant did not realize that he would need Mr. Reuter's testimony until the trial court decided, just before final argument, not to admit the

card *which had been offered by the state and to which he did not object.*[3]

It was at this time that defendant requested a continuance to call Mr. Reuter as a witness, which request was denied.

When we examine the cumulative effects of the failure to disclose, the card and the testimony of the witness not being admitted in evidence, and the prosecutor's closing arguments, the conclusion seems inescapable that the trial at which this defendant was found guilty lacked that fundamental fairness which our rules were designed to ensure and which was his constitutional right. The judgment is therefore reversed.

NELSON, P. J., and DONOFRIO, J., concurring.

**3.** The prosecutor's remarks on initially offering the card were sufficiently ambiguous so that, we feel, the defendant was justified in waiting until the prosecutor clarified the record as to what portion he felt should not be admitted. Certainly the defendant was not put on notice that the prosecutor was objecting to this particular exculpatory remark.