838 F.2d 468
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
David NICHOLS, Appellant.
 No. 86-5540.
 United States Court of Appeals, Fourth Circuit.
 Aug. 11, 1987.
 
 David Nichols, pro se.
 Robert P. Geary (Geary & Davenport, on brief), for appellant.
 Richard W. Pierce, Assistant United States Attorney (John P. Alderman, United States Attorney, on brief), for appellee.
 Before WIDENER and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The defendant, a lawyer, whose office was in Salem, Virginia, was convicted of obstruction of justice in violation of 18 U.S.C. Sec. 1503, of conspiracy to obstruct justice in violation of 18 U.S.C. Sec. 371 and of perjury before a grand jury in violation of 18 U.S.C. Sec. 1623. We affirm the convictions, but without consideration of the defendant's post-trial claim of ineffective assistance of counsel.
 
 I.
 
 2
 Larry Schilling, a convicted drug dealer, was one of Nichols' clients. He appeared as a prosecution witness in Nichols' trial.
 
 
 3
 Schilling testified that in 1982 he wished to purchase a residence on Gates Lane in Roanoke, Virginia. He wished his identity as the true purchaser to be concealed, however, by handling the transaction in the name of Jay Thompson, a fictitious person. Nichols prepared the necessary papers as if the purchaser were Jay Thompson, though Nichols knew there was no such person and that Schilling was the actual purchaser.
 
 
 4
 Later Schilling was arrested on state drug and conspiracy charges and retained Nichols to represent him.
 
 
 5
 While in the Roanoke City Jail in the summer of 1984, Schilling wrote a letter signed in the name of Jay Thompson. That letter was enclosed inside another letter addressed to an unidentified person in Pennsylvania. Nichols smuggled the sealed envelope containing the two letters out of the jail and mailed it. Later the Jay Thompson letter was returned to Nichols with money orders aggregating $5,000 to cover his fee for representing Schilling.
 
 
 6
 Nichols used the Jay Thompson letter in support of a claim on behalf of the fictitious Thompson in a federal forfeiture action that had been brought against the Gates Lane residence.
 
 
 7
 Schilling retained another lawyer to represent him in the criminal proceedings, and that lawyer advised him to clear up the concealment of Schilling's interest in the Gates Lane property. Pursuant to that advice, Schilling admitted in a federal suppression hearing in October 1984 that Jay Thompson was a fiction, and, soon after that, Nichols stipulated to the dismissal of the Jay Thompson claim in the forfeiture proceeding.
 
 
 8
 Upon conviction of the state charges, Schilling was sentenced to 105 years in prison. He also received a 15-year concurrent federal sentence for possession of automatic weapons and income tax violations. Schilling had also been indicted by a federal grand jury for perjury, but the United States Attorney agreed to dismiss that indictment upon Schilling's agreement to testify about the fictitious Jay Thompson before a federal grand jury investigating Nichols. Schilling did so, and he testified at Nichols' trial under a grant of use immunity.
 
 
 9
 Nichols testified in his own defense. He testified that when he handled the Gates Lane transaction he was unaware of Schilling's criminal activity. He innocently prepared the papers according to Schilling's instructions, but without suspecting that Thompson was fictitious. Indeed, he stated that he had met Jay Thompson on two or three occasions, although he could not describe Thompson's appearance or tell where he might be reached.
 
 II.
 
 10
 At oral argument in this case, Nichols appeared in his own behalf. He offered to waive the first two contentions in his brief, and he argued only that the evidence was insufficient to support his conviction. We decline the proffered waiver.
 
 A.
 
 11
 The defendant's principal contention on appeal is that the evidence was insufficient to support the conviction. We examine the evidence in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942), and conclude that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Jones, 735 F.2d 785, 791 (4th Cir.), cert. denied, 469 U.S. 918 (1984).
 
 
 12
 In his trial, Nichols protested his innocence and testified that he was unaware that Jay Thompson was not a real person and the actual purchaser of the real estate. All of that, however, was squarely contradicted by Schilling. Schilling's credibility may have been highly suspect, but there was some circumstantial evidence and other corroboration of his testimony.
 
 
 13
 After Schilling's arrest, the Gates lane residence of which he professed to be only the caretaker was searched. In the course of the search, unrecorded deeds, that Schilling testified had been prepared by Nichols, were found. Those deeds effectively transferred the property from Thompson to Schilling.
 
 
 14
 Nichols' secretary testified that she was sent to a hospital to procure Jay Thompson's signature to the papers. Nichols gave her the number of the room but did not accompany her on her mission. In that room she found Schilling, whom she knew from his many visits to Nichols' office, and a man with an injured leg who professed to be Jay Thompson. The injured man signed the papers as Jay Thompson, though she had never seen him before and knew no Jay Thompson.
 
 
 15
 Hospital records disclosed that there was no Jay Thompson in the hospital on that date, but one Curtis Reed was a patient with an injured leg. Curtis Reed was known to be a close friend and associate of Schilling. Indeed, Curtis Reed was in the Roanoke City Jail with Schilling and signed the Jay Thompson letter which later was mailed from Pennsylvania to Nichols with the $5,000.
 
 
 16
 Schilling testified that it was Curtis Reed who signed the deeds and the letter in the name of Jay Thompson. He also testified that Nichols knew Curtis Reed and knew that Reed was the patient in the hospital room to which Nichols sent his secretary.
 
 
 17
 All of this, accepted by the jury as it was, was quite sufficient to support the finding of guilt on the obstruction of justice and conspiracy counts.
 
 B.
 
 18
 The perjury charge against Nichols was founded upon his testimony before a federal grand jury investigating Schilling for possible income tax offenses and laundering the proceeds of drug sales. Nichols was asked about the Gates Lane property where Schilling lived, and he responded that its true owner was Jay Thompson.
 
 
 19
 Inquiry by the grand jury in an attempt to identify Schilling's assets was obviously relevant to its investigation. Nichols' response that the property was owned by Jay Thompson and not by Schilling was material. The jury could conclude that Nichols knew that his testimony was false.
 
 III.
 
 20
 In response to a request before trial for the production of material as required by Brady v. Maryland, 373 U.S. 83 (1963), the government produced a plea agreement by which a charge of perjury against Schilling was dismissed upon Schilling's agreement to testify truthfully about the ownership of the Gates Lane residence. Nichols' defense lawyer used that plea agreement in an attempt to impeach Schilling as a witness.
 
 
 21
 Nichols now complains, however, that another agreement was not produced. A prosecutor agreed to recommend that any sentence imposed upon Schilling upon a firearms charge be made to run concurrently if Schilling would enter a plea of guilty to a tax evasion charge. Schilling accepted that agreement.
 
 
 22
 That agreement, however, had nothing to do with Schilling's testimony against Nichols or the Gates Lane residence. The testimony was given in response to an agreement to dismiss the perjury charge and the grant of use immunity. The agreement about the income tax charge was not a mitivating factor in Schilling's willingness to testify.
 
 
 23
 Since failure of the prosecution to produce the agreement about the income tax evasion charge could not have affected the outcome of this trial, the failure was not reversible error. United States v. Agurs, 427 U.S. 97, 112 (1976); United States v. Alexander, 789 F.2d 1046, 1049-50 (4th Cir.1986).
 
 IV.
 
 24
 Nichols filed a post-trial motion for a new trial upon a charge of ineffective assistance of counsel. His lawyer had not called as a witness Alice Titus, a real estate agent who had shown the house to Schilling and a companion who had been introduced to her as Jay Thompson.
 
 
 25
 Before trial, the lawyer knew about Alice Titus. He may have talked with her before trial. We think it inappropriate, however, for us to attempt to appraise this collateral issue on this record, particularly without the merit of any testimony from the trial lawyer. If the defendant desires to develop the matter, he may do so in a proceeding authorized by 28 U.S.C. Sec. 2255. It would be more appropriate to advance the claim in that fashion rather than on direct appeal. Thus, we decline to address it here.
 
 V.
 
 26
 The defendant's convictions are affirmed, though we do not pass upon the claim of inadequate representation.
 
 
 27
 AFFIRMED.