957 F.2d 912
 294 U.S.App.D.C. 163
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America,
v.
Christopher BAPTISTE, a/k/a Franklin Baptiste, Appellant.
 No. 91-3155.
 United States Court of Appeals, District of Columbia Circuit.
 March 12, 1992.
 
 Before WALD, HARRY T. EDWARDS and STEPHEN F. WILLIAMS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the district court (Gesell, J.) and on the briefs and oral arguments of counsel. Appropriate disposition of this case does not require a published opinion. See D.C.Cir. Rule 14(c). A majority of this court is satisfied that the district court's decision not to hold an evidentiary hearing on the perjury allegation, and that court's conclusion that no material perjury had occurred, were not clearly erroneous.[1] It is, accordingly,
 
 
 2
 ORDERED AND ADJUDGED that the district court's decision from which this appeal has been taken be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Appellant's argument before this court is that the district court abused its discretion and violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to hold a post-trial evidentiary hearing following discovery that the probation officer's presentencing report contained information about the circumstances surrounding appellant's arrest that was inconsistent with the arresting police officers' testimony at trial. We affirm.
 
 I.
 
 5
 Appellant Christopher Baptiste was convicted for possession with intent to distribute five grams or more of a mixture or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B)(iii). The facts of the case pertinent to this appeal are abbreviated as follows.
 
 
 6
 According to the evidence the government introduced at trial, in the early morning of December 7, 1990 Metropolitan Police Department ("MPD") Sergeant John Brennan, Detective Ronnie Hairston, and Agent Gerald Crispino boarded a Greyhound bus that had just arrived from New York City at the Greyhound-Trailways Bus Station at 1005 First Street in Northeast Washington, D.C. Sergeant Brennan introduced himself to appellant, showed the appellant his MPD identification, and asked him whether he had a bus ticket. [Trial Transcript of March 21, 1991 ("Tr.") at 96.] Baptiste produced a ticket for travel from New York City to Roanoke, Virginia. [Tr. at 97.] Brennan asked appellant whom he was visiting in Roanoke, and appellant answered that he did not know. [Id.] A young man seated a row in front of appellant (identified by appellant in his trial testimony as "Marshall") then stated: "He's with me." [Tr. at 97, 114, 124, 132.] Focusing on one suspect at a time, Brennan, Hairston, and Crispino ignored the other man's statement. Brennan then asked appellant whether he could search appellant's travel bag, which he allowed Brennan to do. [Tr. at 97.] When Brennan discovered plastic bags containing white, rock-like substance stuffed inside a baby powder container, [Tr. at 99, 117,] he signaled for Hairston and Crispino to arrest appellant, which they did. [Tr. at 99, 124.] Hairston and Brennan said that the other traveller was neither questioned nor taken off the bus. [Tr. at 109, 125.]
 
 
 7
 Testifying for himself in defense, appellant said that his friend, Marshall, had asked him to accompany him on a trip to Virginia to buy a car, offering to pay his way. When they set out from Marshall's house, Marshall asked him to carry various toiletry items, including a baby powder container, because his (Marshall's) garment bag "holds hangers and stuff like that". (Tr. at 177.) He also claimed that when the officers approached him and took the baby powder container, they carried on several conversations in which Brennan, who tested the powder and declared that there was nothing in it:
 
 
 8
 [Sergeant Brennan] took the top [off] of the baby powder bottle. His partner passed him a pen. He started going through it. [His partner] said is anything in there? [Sergeant Brennan] said no, not that I know of. He went to the bathroom, he poured [out] half of the powder. He started going through it. The partner said is there anything in there? He said not that I know of. He went back in the bathroom and he closed the door. Then he came back out and then his partner said is anything in there. He said no.
 
 
 9
 (Tr. at 180.)
 
 
 10
 Appellant also claimed that the officers arrested both him and Marshall and found $900 on Marshall, which Marshall explained was for his car purchase. Appellant further claimed that thereafter a police officer told appellant that he should "speak up now" if his friend had anything to do with the drugs. Appellant said he made no comment in response. Appellant also acknowledged being previously convicted of perjury.
 
 
 11
 The jury voted to convict.
 
 
 12
 Following appellant's conviction, a Presentence Report ("PSR") was prepared by a probation officer, Ms. Verdale Freeman. For reasons not entirely clear, the probation officer reported that both appellant and his travelling companion were "placed under arrest and advised of their rights." PSR at 2.
 
 
 13
 On the day scheduled for a pre-sentencing hearing, May 20, 1991, the appellant filed a "Motion to Dismiss" on grounds of governmental misconduct. According to the appellant, the PSR established that Detective Hairston, a key government witness and the person whom the probation officer interviewed in preparing her PSR, had committed perjury at trial by stating that the police had not arrested the other traveller. Appellant asked that the charges against him be dismissed or, in the alternative, that the conviction be set aside. Appellant argued that the PSR corroborated his defense theory, according to which the drugs were planted in his travel bag by his travelling companion.
 
 
 14
 The district court conducted various inquiries, the exact scope of which need not detain us in light of the view we take of the case. Concluding that it was "not a situation where there's a substantial piece of testimony that is--that I can say I'm satisfied is material and false", Second Post-Trial Hearing, May 31, 1991 at 2, the court proceeded to sentencing.
 
 
 15
 According to appellant, the "contradiction" between Hairston's testimony at trial and the information contained in the PSR indicates that the government knowingly presented perjured testimony, and failed to disclose material exculpatory evidence (namely, that the Hairston testimony was perjured), thereby violating Brady v. Maryland, 373 U.S. 667 (1963).
 
 II.
 
 16
 Although the record suggests some reason to believe that the probation officer simply made an innocent error in asserting that Hairston had told her that the other traveller had been arrested (so that there was simply no falsity in the government's trial evidence), we conclude that even if Hairston's testimony of the officers' handling of Marshall was false, the government's failure to disclose corrective information was not material. Omitted evidence is material for Brady purposes if "it creates a reasonable doubt that did not otherwise exist". United States v. Agurs, 427 U.S. 97, 112 (1976). As this court has said:
 
 
 17
 Brady directs only that "material" information be disclosed, and in Bagley the Supreme Court held information is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."
 
 
 18
 Tarantino, 846 F.2d at 1417 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).
 
 
 19
 Information that the other traveller was also detained or arrested would have only a minor impact on the probability that appellant was an innocent gull rather than a knowing possessor of illegal drugs. Appellant, in his own account of a colloquy after arrest, declined to point a finger at Marshall (saving that for the trial); nor had he sought to secure Marshall's presence for the trial.
 
 
 20
 It is possible, of course, to use the supposed conflict in Hairston's remarks as the thin end of a wedge. If an officer lied about the arrest of Marshall, perhaps that makes it marginally more likely that Marshall was a police informant, who deliberately planted the drugs on appellant as part of a frame-up. But these speculative inferences would do little to undercut the evidence that appellant in fact had possession of the drugs and, by his account, engaged in a post-arrest colloquy in which he failed to advance the explanation that he offered at trial. Nor would it have added credibility to his account of how he happened to take possession of the baby powder.
 
 
 21
 Thus, the undisclosed information about the arrest of Marshall (assuming arguendo that it was correct), is insufficient to undermine our confidence in the jury's verdict. Accordingly, we conclude that appellant's Brady claim is unsupportable.
 
 
 22
 Affirmed.
 
 
 
 [1]
 Judge Wald would require a hearing to determine if the alleged discrepancy is a real one and if so, whether it would provide a material reason for a new trial