**Stephen ALLEN, Petitioner,**

v.

**Daniel SENKOWSKI, Respondent.**

**No. CV 97 2413.**

United States District Court,
E.D. New York.

Dec. 26, 2001.

Stephen Allen, Wallkill, NY, pro se.

Susan G. Kellman, New York, NY, for petitioner.

Howard A. Getzler, District Attorney's Office, Brooklyn, NY, for respondent.

Memorandum, Order, and Judgment

WEINSTEIN, Senior District Judge.

Petitioner seeks a writ of habeas corpus. He was convicted of three counts of murder in the second degree and related crimes by a New York State Court Jury. His sentence was imprisonment for twenty-five years to life and various concurrent terms. On appeal his conviction was affirmed. *People v. Allen,* 163 A.D.2d 396, 558 N.Y.S.2d 121 (2d Dep't.1990) 77 N.Y.2d 875, 568 N.Y.S.2d 918, 571 N.E.2d 88 (1991). A variety of collateral attacks followed in the state courts, *See, e.g., People v. Allen,* 222 A.D.2d 598, 636 N.Y.S.2d 643 (2d Dep't 1995), 240 A.D.2d 418, 658 N.Y.S.2d 1006 (2d Dep't 1997).

In April 1997 petitioner sought habeas relief in federal court. Counsel was appointed in February of 1998. She notified the court in December of 1999 that some of petitioner's claims required exhaustion. After those claims had been rejected by the state courts the case was heard in November of 2001.

The court orally denied the petition on the record before it, but indicated that a certificate of appealability would be granted on the issue of the unavailability of a grand jury witness who would have testified supporting petitioner's alibi. The court requested that respondent obtain the relevant grand jury testimony. Entry of judgment was stayed to permit the respondent to provide the grand jury testimony. On December 19, 2001 that testimony was furnished to the court and petitioner's counsel. An examination of the testimony and of the entire records supports the decision to dismiss and to grant a certificate of appealability.

Early in a morning in February 1985 five men entered an apartment in Brooklyn. Three occupants were shot and killed, two were left unharmed and two survived an attempt to kill them. Petitioner was arrested later that month.

Two survivors of the shootings had known petitioner through prior drug transactions. While they were of blemished character as drug users and sellers, their identification in court of defendant as the leader of the murderers was unshaken. No cross-racial, or bias issues tainted the identification. Their testimony differed in particulars of surrounding details, but not as to petitioner's role in the killings.

Petitioner sought to present four alibi witnesses. His female companion testified that he and she had spent the entire relevant period at her Long Island home or while the two toured Nassau and Queens seeking a motel to celebrate St. Valentine's Day. The sister of petitioner's lady testified confirming part of the alibi—presence at the Long Island home the day and part of the evening preceding the murders. The girlfriend's mother testified before the grand jury that petitioner was in her home with her daughter all the day and part of the night before the next morning's mur-der; she could fix the date because it was her husband's birthday. She was not available at the trial because of illness. Nor was her ill husband who was also proffered as an alibi witness.

The trial court refused a continuance to obtain the mother's testimony; denied admission of the grand jury testimony, after examining it; and agreed with the prosecutor not to accept petitioner's suggestion that the state stipulate to the grand jury testimony. *See* Transcript of trial 1560–67.

The offer respecting the missing alibi witnesses was made just before summation. Since technical arguments support respondent's case the entire relevant transcript of offer, colloquy and rejection is set out below. *See Id.*

[June 6, 1986]

THE COURT:.... And I do not find that the request [as to another witness] is timely made. This is the eve of summations and charge. This is not something that came up suddenly.

From the very beginning of the case I announced the day we would be proceeding to summation and charge. We have had every Friday as a day off, at least for counsel to do work, getting witnesses.

I have stated time and again I would sign any and all subpoenaes, appoint any and all investigators to expedite counsel's job to see that they get their witnesses.

I find that this is late notice, untimely and with respect to this [other] witness, I find no basis at this time to put him on.

MR. KIMMEL: [Defense counsel] I take an exception. Your honor, in addition, I have two other witnesses [to the alibi] who are not able to be in court

today. They are elderly people, are sick.

We attempted to get them last week. They are still sick. They come [sic] on Wednesday and I am informed that Iris Taitt who is 58 years old, who testified at the Grand Jury, and Frederick M. Taitt, who is 63 years old, and they are unable to appear today because of illness.

And under the circumstances, the district attorney had time to review their background and I am making that request.

THE COURT: The one who testified in the Grand Jury, I believe in that instance, the testimony would be cumulative, adding nothing new or different.

In any event there have been no doctors' reports submitted and I find at this late date, at this time, that while counsel may be making the application in good faith, I don't believe it is a good faith offering and I do not accept it.

And I find no basis for delaying this trial any further.

MR. KIMMEL: I have the investigator here, Mr. Juskim (phonetic); who went out and checked that out, your Honor.

He tried to get them in last week and we expected them last week. But they were sick at that time and over the weekend again checked it out.

Your Honor, as to alibi witness Frederick Taitt, I spoke to his daughter here.

He indicated to me he won't be able to come but Iris Taitt would be here.

DEFENDANT ALLEN: If we have [sic] the trial in six months—

MR. KIMMEL: He had a relapse, Frederick Taitt and because of lateness in delays in going to trial, he had a stroke and therefore was unable to come.

If he would have had a trial six months ago, then the alibi witness would have been able to appear in his behalf.

THE COURT: If I had this case six months ago ready for trial, you would have had a trial six months ago. And I don't know if the same district attorney had it from the beginning, you would have had it ready.

MS. RECANT [Prosecutor]: That is not the issue at all. I have had this case for quite some time and I have been ready for trial.

The record in Complex Parts, Complex H in this building, Criminal Term, I answered ready for trial on many occasions.

The defendant was not ready for trial. His attorneys at various times requested an adjournment for further investigation.

Defendant specifically requested that his initial attorney be relieved and he was relieved.

A second attorney was then appointed and a lengthy adjournment for that attorney to acquaint himself with the case was granted by the court at defendant's request.

Subsequent to that, after that attorney, the attorney prepared for the case, answered ready for trial. The People answered ready.

That Attorney was relieved at the defendant's request and subsequent to that Mr. Kimmel, who is presently on this case, had to be appointed and time for investigation was allowed to Mr. Kimmel.

So the People have been ready.

THE COURT: I am not laying blame on the District Attorney's Office. I am saying if I had the case earlier, it would have been ready earlier.

MS. RECANT: Any pre-trial delay was based on the defendant having had several different attorneys.

THE COURT: I am not laying the blame on everything [sic]—

MS. RECANT: I am not saying the Court is. I am saying the defendant seems to think or based upon his motion—

THE COURT: He has a right to make that statement and he has a right to put his views on the record.

MS. RECANT: I agree. I am just opposing his views.

MR. KIMMEL: We had an opposing—what the district attorney says because with respect to the last attorney, it is not defendant who requested that the lawyer be removed.

The attorney himself got relieved.

Your Honor, on [sic] the alternative, all I ask is that Iris Taitt had testified before the Grand Jury and if the district attorney would stipulate that if Iris Taitt would be called she would testify that Mr. Allen was in the home that night—

MS. RECANT: No, I will not stipulate.

MR. KIMMEL: I request your Honor to have a continuance. I will try to have her here tomorrow.

DEFENDANT ALLEN: She won't be here tomorrow. Wednesday. She is ill.

THE COURT: We could have made other arrangements if we knew, including a video taping.

MR. KIMMEL: I take exception.

THE COURT: Let me see the Grand Jury testimony.

MR. KIMMEL: As to Mr. Allen's first attorney, that was Mr. Corbet (phonetic) and he got ill and therefore he was substituted.

DEFENDANT ALLEN: I at no time relieved my attorneys.

(Cont'd) The defendant at no time relieved his attorneys.

THE COURT: Did I ever say you did?

DEFENDANT ALLEN: The district attorney did and I want it on the record. I'm saying it now.

THE COURT: I never said you did.

DEFENDANT ALLEN: I'm going to say—you're letting it be on the record. I want it to be clear.

THE COURT: Fine. You have had your say and I don't disagree with your right to say it.

What was the stipulation you wanted, Mr. Kimmel?

MR. KIMMEL: That if witness Iris Taitt would be called, that she would testify that the defendant was in her home until about midnight of February 14.

THE COURT: Without conceding the truth of the statement—

MS. RECANT: No, I will not stipulate, you Honor. I don't think that it is proper.

The defense case began last Tuesday. There has been ample opportunity to substantiate where Iris Taitt is or the nature of her illness.

I cannot stipulate as to what she would or not testify to. This is an older woman who is talking about an incident that occurred years ago.

I think to put me in that position is not really fair. I will not stipulate to that.

MR. KIMMEL: She is the mother of Diana Taitt and Bridget Taitt. She was the occupant of that home. Homeowner.

MS. RECANT: If she took the stand I would cross-examine her. The nature of her cross-relationship, ability to recall other dates.

I can't stipulate to that.

MR. KIMMEL: The district attorney had opportunity in the Grand Jury to cross-examine her and—

MS. RECANT: That is not the point. The district attorney did not have all the knowledge that I have now with which to cross-examine this witness.

The fact that she was—this is not conditional testimony. There was no request made to take conditional testimony based on failing health.

THE COURT: We could have taken conditional testimony.

MS. RECANT: There was never a request.

THE COURT: If there was a request as late as last week, we could have done that.

I read the Grand Jury testimony. There is nothing further. While it does have some weight, there is no reason we could not have been made aware that she was that ill and we could have had conditional testimony taken at that time, last week.

The trial judges had technically sound reasons for denying petitioner's motion to introduce the grand jury testimony of the missing alibi witness. It was cumulative, came too late, and would have been in a more appropriate form had the testimony been preserved by a deposition taken contemporaneously with the trial.

Yet, the reasoning seems thin, being largely based on the trial assistant district attorney's contention that she could do a better job of cross-examining the witness than the grand jury assistant district attorney had done. It is but one of myriad cases where the prosecutor (in both state and federal courts), seeking to eke the last mite of prosecutorial advantage, denies the defense evidence that, had it been given to the jury, might have laid the issue at rest without prejudicing the people's case.

On balance, while the issue is troublesome, there appears to have been no constitutional violation. The case is almost at the other end of the spectrum from one like *Phan v. Greiner*, 165 F.Supp.2d 385 (E.D.N.Y.2001), where the only identifying witness had not known defendant, visual conditions were less than ideal, the identifier was Caucasian picking the petitioner out of a group of Chinese, and defense counsel had made extensive efforts to obtain the presence of the one (apparently unbiased) grand jury alibi witness who had critical information. Cf. Mark Carriden and Leroy Phillips, Jr., Contempt of Court, The Turn–of–the–Century Lynching that Launched a Hundred Years of Federalism (1999) (questionable identification with solid alibi and unfair trial).

Because the issue was close this court has read the entire trial record. Petitioner was ably represented at his trial; the evidence against him was strong; and the state appeals and collateral attacks seem to have provided an exhaustive and adequate analysis of petitioner's contentions. The trial court did not abuse its discretion in a way that denied petitioner his constitutional rights.

None of the many other contentions of petitioner warrant analysis. They lack merit. Appointed counsel, as well as petitioner himself have fully ventilated all possible issues.

The trial met constitutional minimum standards of due process. The "omitted evidence" did not create "a reasonable doubt that did not otherwise exist." *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See also, e.g., Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988); *Fuller v. Gorczyk*, Docket 00–2430 (2d Cir., Nov. 27, 2001).

The petition is dismissed. A certificate of appealability is granted on the issue of

whether petitioner should have been permitted to introduce the grand jury testimony of an absent alibi witness.

SO ORDERED.