## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

 v.

Ronald F. Polite

March 31, 2011

Case No. FE-2010-1724

By Judge Charles J. Maxfield

 This matter came before the Court on March 29, 2011, for argument on Defendant Ronald Polite's motion to dismiss the charge against him due to the Commonwealth's inadvertent destruction of evidence. The Defendant stands indicted for the felony of Distribution of a Controlled Drug, a violation of Virginia Code § 18.2-248(C). At the conclusion of the hearing, the matter was taken under advisement. For the following reasons, the Defendant's motion is denied.

*Background*

 It is alleged that, on December 19, 2007, the Defendant sold cocaine to an undercover police officer. At the March 29th hearing, Detective Hulse testified that the substance field-tested "positive" for cocaine. Detective Hulse also testified that the evidence was held in his private locker until it was taken to the Northern Virginia Forensics Laboratory on January 25, 2008. Lab tests affirmed the field test and determined that the white powder seized from the Defendant was cocaine. (The certified copy of the certificate of analysis is in the file and was given to the Defendant during discovery.)

 The Defendant was arrested on August 4, 2010, pursuant to a warrant issued on April 7, 2010. The case was bound over at a preliminary hearing on October 27, 2010. The case went to the grand jury, and a true bill of indictment was returned on November 15, 2010. The case was set for trial on January 5, 2011.

 On January 3rd, both parties learned that the evidence had been destroyed. The trial date was continued to March 29, 2011. During a March 25th hearing, the court granted a defense motion to independently analyze

the substance that all present knew had been destroyed. The Defendant insists that this court dismiss this case for failure to comply with the discovery order. The court is aware of no authority importing independent significance to this discovery order and does not find the argument persuasive in light of the case law cited herein. *See, e.g., Arizona v. Youngblood,* 488 U.S. 51 at 57 (1988). The March 29th trial date was converted to a motion hearing to dismiss the charge.

During the May 29th hearing, Detective Hulse supplied the Court with a "Disposition Tracer" dated February 24, 2010. The Disposition Tracer is directed from a Property Control Officer to Detective Hulse. It lists evidence held in safe-keeping for four cases, including the Defendant's, and requests instruction from the detective as to disposition (i.e., return to owner, destroy, hold for investigation, etc.). In the box relevant to the Defendant's case, the abbreviation "Dest" is hand-written, presumably instructing destruction of the listed evidence ("Illegal Drugs 3 bags of cocaine"). Detective Hulse testified that, although he ordered the destruction, he could not recall his justification for doing so and that, actually, he had not wanted it destroyed. There was no evidence to the contrary, and the Court found that the destruction was inadvertent.

The Defendant argues that *Brady v. Maryland,* 373 U.S. 83 (1963), entitles him to inspection and testing of any evidence that might have exculpatory relevance or impeachment value. He contends that the Commonwealth is precluded from relying on such evidence because it was destroyed before the Defendant had the opportunity to inspect or test it. Therefore, he claims, the case against him should be dismissed. The Commonwealth, however, insists that *Arizona v. Youngblood,* 488 U.S. 51 (1988), and *Thomas v. Commonwealth,* 244 Va. 1 (1992), control and that there is no denial of due process for failure to produce "potentially useful" evidence unless a criminal defendant can show bad faith on the part of the police.

## Analysis

The Due Process Clause of the Fourteenth Amendment requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984). "To safeguard that right, the Court has developed what might be loosely called the area of constitutionally guaranteed access to evidence." *Id.* (internal quotation marks omitted). Most prized is the privilege to obtain favorable evidence material to guilt, innocence, or punishment, *Brady,* 373 U.S. at 87, regardless of whether expressly requested of the prosecution, *United States v. Augers,* 427 U.S. 97, 111 (1976). "Exculpatory evidence is material if there is a reasonable probability that the proceeding would have resulted in a different outcome had the evidence been disclosed to the defendant. A

`reasonable probability' is one that is sufficient to undermine confidence in the outcome of the proceeding." *Lovitt v. Warden*, 266 Va. 216, 244 (2003) (internal citations omitted). Suppression by the prosecution of such material, exculpatory evidence violates due process regardless of the prosecution's good or bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547 (2004).

That said, the United States Supreme Court has held that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the result of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. In that instance, "failure to preserve "potentially useful evidence" does not violate due process *"unless a criminal defendant can show bad faith on the part of the police." Id.* at 58 (emphasis added). Also relevant to this inquiry is whether the exculpatory value of the evidence was "apparent before the evidence was destroyed," *Trombetta*, 467 U.S. at 489, and whether the defendant has "alternative [reasonably available] means of demonstrating . . . innocence," *id.* at 490. *See Youngblood*, 488 U.S. at 56. The former goes to the "presence or absence of bad faith by the police." *Id.* at 56, n. *. The latter goes to the weight of the evidence, which must be significant, in the accused's defense. *Trombetta*, 467 U.S. at 488.

In this case, the substance at issue was clearly the kind of "potentially useful evidence" referred to in *Trombetta* and *Youngblood*, and not the "material exculpatory evidence" addressed in *Brady* and *Augers*. The lab test result did not reveal anything of exculpatory value, but instead inculpated the Defendant. *See Fisher*, 540 U.S. at 548 (finding no due process violation where substance had tested positive four times for cocaine before it was destroyed). This makes extremely remote the chance that the preserved substance would have been exculpatory. *See Trombetta*, 467 U.S. at 489 (finding no due process violation when breath samples were destroyed because, in part, the surviving breath-analysis test was so accurate that "[i]n all but a tiny fraction of cases, preserved breath samples would simply confirm the . . . determination . . . of blood-alcohol concentration."). Moreover, the "possibility that evidence could have exculpated a defendant depending on future testing results is not enough to satisfy the constitutional standard of materiality." *Lovitt*, 266 Va. at 241. Thus, production of the actual substance, especially when lab tests had already determined the substance to be cocaine, cannot be "expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488.

In addition, bad faith on the part of the police is not evident. The court specifically found that the destruction was inadvertent.

Finally, the Defendant is not without means to demonstrate his innocence. He can question the reliability of the laboratory tests. He can challenge the chain of custody. He "is [also] free to argue to the finder of fact that [the physical substance] might have been exculpatory." *Youngblood*,

488 U.S. at 59. *See Trombetta*, 467 U.S. at 490. Thus, the weight of the lost evidence is not so great as to prevent the Defendant from asserting a strong defense.

Had the Commonwealth failed to produce the substance *and* any lab test results, the result may have been different. The same might be true had the Commonwealth produced inconsistent lab results, such that production of the physical substance for further testing could undermine the prior lab tests and, thus, undermine confidence in the proceeding. But neither is this case. "The fact remains that, as in *Fisher*, the lab results of the substance still exist as evidence, even though the actual substance[] w[as] destroyed pursuant to police department policy." *United States v. Wade*, 2006 U.S. Dist. LEXIS 78106, *10 (W.D. Mich. Oct. 26, 2006). Because the lab results still exist, so does the Commonwealth's case against the Defendant.

The Defendant's Motion to Dismiss is denied.