J-S66013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAVID F. KELLY BEY | |
| Appellant | No. 1624 MDA 2015 |

Appeal from the Judgment of Sentence August 25, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-SA-0000077-2015

BEFORE:  BOWES, PANELLA AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 13, 2016**

David F. Kelly Bey appeals from the judgment of sentence of sixty days incarceration, plus a fine and costs, following his conviction for driving while operating privilege is suspended (DUI-related).  We affirm.

The facts underlying this matter are as follows.  On January 3, 2015, Appellant was traveling, with two passengers, in the left lane on Interstate 81 notwithstanding the absence of traffic in the right lane.  Despite precipitation, Appellant had not engaged his windshield wipers or headlights. While monitoring traffic, Pennsylvania State Trooper Zeina Lane observed Appellant and initiated a traffic stop.  A mobile video recording device attached to Trooper Lane's vehicle recorded the encounter.  Trooper Lane issued four citations for violations pursuant to the Pennsylvania Vehicle

Code, including driving while operating privilege is suspended (DUI-related), failure to drive in the right lane, and failure to display head lamps during a required period.[1]

A summary trial was held before the magisterial district judge on March 9, 2015. While not transcribed, the record indicates the following occurred at the proceeding. During the summary hearing, the judge appointed counsel. Appointed counsel then requested production of the video recording of the traffic stop. The Trooper in attendance at the proceeding informed Appellant that the recording had been deleted after thirty days in accordance with established Pennsylvania State Police procedure. The district judge found Appellant guilty of the three above-mentioned violations and dismissed the fourth. Appellant appealed his conviction for driving while operating privilege is suspended (DUI-related) to the court of common pleas for a *de novo* trial.

Prior to his hearing on appeal, Appellant filed a pretrial omnibus motion, styled as a suppression motion, alleging that the failure to produce the video evidence from the traffic stop violated **Brady v. Maryland**, 373 U.S. 83 (1963) under the United States and Pennsylvania Constitutions, and requesting the suppression of all physical evidence obtained from the traffic stop. A joint hearing and trial was held on August 25, 2015, wherein the

---

[1] The certified record does not indicate the nature of the fourth citation.

court denied Appellant's motion and found him guilty of driving with a suspended license. The court sentenced Appellant to sixty days incarceration, a $500 fine, and costs. Appellant filed a timely appeal, and complied with the court's order to file a Rule 1925(b) statement of errors complained of on appeal. The court then authored its Rule 1925(a) opinion, and this matter is now ready for our consideration.

Appellant raises two questions for our review:

I.    Is there a due process right to reasonable preservation of potentially useful evidence in a criminal prosecution under the Pennsylvania constitution?

II.   Does any such due process right attach to a summary proceeding that includes mandatory jail time?

Appellant's brief at 5.

Appellant first raises a constitutional challenge, which is a pure question of law, and therefore our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Britton***, 134 A.3d 83, 87 (Pa.Super. 2016). Appellant argues that Article I, Section 9 of the Pennsylvania Constitution provides broader protection of a person's due process rights than the protection afforded under the Fourteenth Amendment to the United States Constitution. Appellant asserts that under our Constitution, due process requires the state to preserve potentially useful evidence, in this case the video recording of his traffic stop, regardless of the Commonwealth's bad faith, thus expanding the evidentiary

protections guaranteed by **Brady**, **supra**.  In support of this position, Appellant has provided the requisite four-part analysis under **Commonwealth v. Edmunds**, 586 A.2d 887 (Pa. 1991).

Since resolution of this matter involves the scope of the test outlined in **Brady**, **supra**, we set it forth at the outset.  In **Brady**, the United States Supreme Court held that

> [t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  This Court has held that to prove a **Brady** violation, the defendant has the burden of demonstrating that:  (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant.  Prejudice is demonstrated where the evidence suppressed is material to guilt or innocence.  Further, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**Commonwealth v. Koehler**, 36 A.3d 121, 133 (Pa. 2012) (internal quotation marks and citations omitted).  As a threshold matter, this Court must determine whether the suppressed evidence is material to guilt or punishment.

Appellant avers that, historically, Pennsylvania has relied upon the test for materiality espoused in **United States v. Agurs**, 427 U.S. 97 (1976).  In **Agurs**, the Supreme Court found, in part, that due process was violated

"when there was a failure to respond to a defendant's specific request for information if the suppressed evidence "[m]ight have affected the outcome of the trial." *Id*. at 104. Appellant maintains that our High Court continued to rely on this formulation even after the United States Supreme Court abrogated the test in *United States v. Bagley*, 473 U.S. 667 (1985). *See Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992); *Commonwealth v. Green*, 640 A.2d 1242, 1245 (Pa. 1994); *Commonwealth v. Johnson*, 727 A.2d 1089, 1094 (Pa. 1999). In *Bagley*, the Court found that regardless of the specificity of the request, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 682. Moreover, "a 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*. Despite early disapproval of the *Bagley* Court's articulation of materiality, our Supreme Court began relying on *Bagley* over a decade ago. *See Commonwealth v. Ferguson*, 866 A.2d 403, 407 (Pa.Super. 2004) (concluding that the standard of materiality enunciated in *Bagley* applies to all *Brady* claims raised in Pennsylvania).

In *California v. Trombetta*, 467 U.S. 479, 488 (1984), the United States Supreme Court held that the state suppressed evidence when it destroyed breath samples used in a breathalyzer test. Nevertheless, the Court found this suppression did not violate due process. In reaching that

conclusion, the Court stated "evidence [triggering a State's duty to preserve evidence] must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488-489.

The concept of bad faith was soon thereafter introduced into the federal analysis in ***Arizona v. Youngblood***, 488 U.S. 51 (1988), wherein the police spoiled semen samples, and consequently, the defendant was unable to perform independent analysis of those samples. In ***Youngblood***, the Court first distinguished between "materially exculpatory" evidence and evidence "of which no more can be said than that it could be subjected to tests, the results of which might have exonerated the defendant[,]" that is, so-called "potentially useful" evidence. *Id*. at 57. When faced with merely potentially useful evidence, the Court opined that the defendant is required to show the evidence was destroyed in bad faith. The Court stated, "We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating a defendant." *Id* at 58.

Appellant posits that our High Court broke from this line of reasoning and announced a more stringent test in *Commonwealth v. Deans*, 610 A.2d 32 (Pa. 1992). In that case, the defendant was charged with forging a lottery ticket three years after he attempted to claim it. In the interim, the Commonwealth had investigated, and subsequently lost, the purportedly forged ticket. The Court distinguished *Deans* from *Youngblood*, stating "[t]he prosecutor in *Youngblood* did not attempt to make use of incriminating evidence denied to the defendant . . . [thus] there was no suggestion by the prosecutor that the missing evidence would have incriminated the defendant, and it was pure speculation by the defendant that the evidence, if it existed, might have exonerated him." *Id*. at 518-519. However, in *Deans*, "the prosecutor conducted an examination and is attempting to introduce the results of his examination as evidence against the defendant while denying the defendant any possible benefit to be derived from an examination of the primary evidence in the case." *Id*. at 519. Hence, the *Deans* court found that permitting the use of that evidence by the prosecutor "would deprive appellant of due process irrespective of good faith or bad faith on the part of the prosecution." *Id*.

Following the decision in *Deans*, *supra*, the United States Supreme Court decided *Illinois v. Fisher*, 540 U.S. 544 (2004). The *Fisher* Court held that there was no violation of due process where the police destroyed cocaine seized during a traffic stop nearly eleven years after the defendant

was charged. Prior to destroying the cocaine, the state had subjected it to four separate tests. Utilizing the **Youngblood** framework, the Court determined that the cocaine was merely "potentially useful evidence," and that "at most, respondent could hope that, had the evidence been preserved, a **fifth** test conducted on the substance would have exonerated him." **Id**. at 548 (emphasis in original). The Court clarified its understanding of the distinction elucidated in **Youngblood**, stating "the applicability of the bad-faith requirement in **Youngblood** depended not on the centrality of the contested evidence to the prosecution's case or the defendant's case, but on the distinction between 'materially exculpatory' evidence and 'potentially useful' evidence." **Id**. at 549. Hence, **Fisher** established the distinction between "materially exculpatory" and "potentially useful" evidence as the threshold requirement for applying **Brady**, **supra** to destroyed evidence.

Our Supreme Court adopted **Fisher**, **supra**, in **Commonwealth v. Snyder**, 963 A.2d 396 (Pa. 2009), which was decided solely on federal grounds. In expressly abrogating **Deans**, **supra**, the Court established the **Youngblood** distinction as the first step in determining whether the destruction of evidence violates due process under **Brady**, **supra**. The Court observed that, given the difficulties of determining the materiality of unavailable evidence, "we have required support for an allegation that destroyed evidence was exculpatory, holding it cannot be based on a 'mere

assertion.'" *Id*. at 405. *Snyder* is the current articulation of the materiality test in this Commonwealth.

Notwithstanding our decision in *Snyder*, *supra* and consistent reliance on United States Supreme Court precedent in analyzing destroyed evidence due process claims, Appellant contends that requiring a showing of bad-faith departs from the purpose of Article I, Section 9 of the Pennsylvania Constitution as well as our decision in *Deans*, *supra*. Appellant reasons that the development of *Brady* jurisprudence in Pennsylvania and our tendency to find that Article I, Section 9 more broadly protects the rights of citizens of the Commonwealth, militates in favor of a finding that police should preserve potentially useful evidence in a criminal proceeding regardless of bad faith. We find no compelling reason to extend the evidentiary protection afforded by *Brady*, *supra* and *Snyder*, *supra* to potentially useful evidence.

Instantly, it is undisputed that the recording of Appellant's traffic stop was merely potentially useful evidence. Moreover, the Commonwealth made no attempt to use the recording, nor was it necessary for it to sustain its evidentiary burden. Appellant argues that information contained on that tape was essential to impeach Trooper Lane. However, Appellant had access to two witnesses who could have provided an account of the weather conditions on the day in question, and Appellant's behavior. Appellant made no showing that those witnesses were unavailable to impeach Trooper Lane's

testimony. In light of this readily available evidence, the recorded evidence of the traffic stop could, at best, merely support this otherwise available impeachment testimony. Even providing that the recording was potentially useful to Appellant, its materiality to Appellant's guilt was dubious. Hence, the suppression did not prejudice Appellant. *Brady*, *supra*.

Furthermore, despite Appellant's averments to the contrary, courts in this Commonwealth have consistently adopted and applied the case law outlined in the United States Supreme Court's *Brady* jurisprudence. Pursuant to *Fisher*, *supra* and *Snyder*, *supra*, the Commonwealth could only be found in violation of *Brady* for failing to preserve the recording if Appellant made an affirmative showing that it was destroyed in bad faith. However, Appellant did not allege the Commonwealth's destruction of the recording was in bad faith. In addition, the Commonwealth proffered evidence that, as a matter of policy, traffic-stop recordings are destroyed after thirty-days, unless otherwise requested. *Snyder*, *supra* at 405 (finding it "very unlikely we could find bad faith where samples are destroyed pursuant to standard procedure."). Thus, due to the likelihood that access to the recording would have no impact on the outcome of the proceeding, and the Commonwealth's lack of bad faith in its destruction, we find Appellant is not entitled to relief.

Having determined that the evidentiary protections espoused in **Brady**, **supra** do not apply to potentially useful destroyed evidence absent a showing of bad faith, we do not reach Appellant's second issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016