**UNITED STATES of America**

**v.**

**Marlon HAIGHT, Defendant.**

**Criminal Action No. 15–88 (JEB)**

United States District Court,
District of Columbia.

Signed January 5, 2016

Christopher Macchiaroli, Nihar Ranjan Mohanty, U.S. Attorney's Office, Washington, DC, for United States of America.

### *ORDER*

JAMES E. BOASBERG, United States District Judge

On December 3, 2015, this Court granted the Government's motion to obtain a buccal swab from Defendant Marlon Haight in order to compare his DNA to any DNA potentially recovered from firearms seized in connection with his arrest. *See* ECF No. 30. Haight now asks that the Court require the lab conducting the DNA test to split between two swabs any biological material obtained from the guns. The Government, he contends, may then attempt to extract DNA from one swab,

while preserving the other for his expert to test. The Government opposes such a requirement, and the Court will not impose it.

█ In arguing his position, Haight relies on a purported constitutional "entitle[ment] to the preservation of biological material...." Mot. at 2. Under *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), to meet the standard of constitutional materiality that would compel disclosure to the defense, "evidence must ... possess an exculpatory value that was apparent before the evidence was destroyed...." *Id.* at 489, 104 S.Ct. 2528. Here, the defense cannot argue that potential DNA on a firearm is exculpatory; indeed, the Government is conducting the test precisely because it believes the opposite to be true.

█ Yet, a defendant need not show that evidence would *definitely* be exculpatory; so long as it is *potentially* exonerating, he may have a right to its preservation. The Government here does not dispute that DNA evidence falls into such a category. The Supreme Court has articulated a standard for such evidence: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Courts have repeatedly held that, in the case of genetic material, the Government does not act in bad faith by consuming such material in testing for DNA, at least where it has a legitimate scientific reason for doing so. *See, e.g., United States v. Gardner*, No. 14–61, 2015 WL 1951809, at *2–3 (E.D.N.C. Apr. 29, 2015) (permitting consumption, but granting defense request that its expert attend testing); *United States v. Rogers*, No. 10–10140, 2010 WL 5015329, at *4–5

(D.Kan. Dec. 3, 2010) (permitting consumption); *United States v. Moore*, No.2013–CF2–10140 (D.C.Sup.Ct. Apr. 11, 2014) (Opinion by Judge Frank Burgess, appended to Govt's Motion) (permitting consumption).

█ The Court finds that the Government has set forth a sufficient scientific basis for consumption here. It substantially relies on the sworn statement of Bruce Budowle, Executive Director of the Institute of Applied Genetics at the University of North Texas Health Science Center, who is "among the foremost experts in the field of DNA profiling...." *Gov't of Virgin Islands v. Byers*, 941 F.Supp. 513, 523 (D.V.I.1996). Dr. Budowle explains that where processing items such as a gun, from which there is a lower likelihood of obtaining genetic material, the best practice is to attempt to extract DNA from the entire sample, as opposed to dividing the sample first. *See* Sworn Statement of Bruce Budowle (ECF No. 32–1), ¶ 4. The Government's approach, he avers, "is based on sound scientific principles and practices to ensure the best chances of obtaining a DNA typing result." *Id.* He concludes, "I recommend that scientifically the best approach is to extract the entire swab when the sample potentially may contain low levels of DNA." *Id.,* ¶ 7. This is sufficient to vitiate any finding of bad faith. *See Moore* (relying on Budowle Statement).

Finally, the Court's decision does not rob Defendant of any testing role. As the Government has explained in an earlier letter to defense counsel: "When testing evidence of this nature, the laboratory typically has DNA 'extract' left over that will be preserved. It is the laboratory's policy to preserve all DNA extracts that remain after the swabs have been consumed during testing. Furthermore, any remaining extract will be made available for the de-

fense if your client requests...." Opp. at 2. In other words, Defendant may still obtain some remedy here—namely, an opportunity to independently test any DNA extract not consumed in the Government's test.

The Court, accordingly, ORDERS that Defendant's Motion is DENIED.

IT IS SO ORDERED.