**UNITED STATES of America**

v.

**Willie QUINONES, Defendant**

**Case No. 16–cr–0223 (TSC)**

United States District Court, District of Columbia.

Signed February 21, 2017

Kara Martin Traster, U.S. Attorney's Office, Washington, DC, for United States of America.

## ORDER

TANYA S. CHUTKAN, United States District Judge

Before the court is Defendant Willie Quinones' motion to compel the Government to preserve evidence. At issue are three sets of biological evidence swabs: one set taken from the Steak 'N Egg restaurant, the scene of the alleged crime; another set taken from a Lexus automobile; and a final set taken from clothing items seized during a search of the apartment where Quinones was arrested, which belongs to Quinones's girlfriend. The Government notified defense counsel that the U.S. Attorney's Office intended to authorize the consumption of all three sets of swabs during testing for touch DNA. Quinones argues that the Fifth and Sixth Amendments to the Constitution and Federal Rule of Criminal Procedure 16 prohibit the Government from consuming the biological evidence in its entirety during testing. Quinones further requests that this court compel the Government to cut each swab in half during the initial extraction and preserve one half for the defense to conduct independent DNA testing. The Government opposes this motion, arguing that neither the Constitution nor Rule 16 require this approach, nor is it scientifically advisable. For the reasons stated below, Quinones's motion is DENIED.

██ The Due Process Clause of the Fifth Amendment provides defendants with "a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Here, the parties disagree about whether the swabs at issue are "material." To rise to the level of "constitutional materiality," the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528 (citing *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Quinones argues that both elements are satisfied because the "exculpatory value of the swabs is readily apparent prior to destruction, particularly where: (a) there were other persons at each crime scene, and (b) the swabbed evidence from each crime scene include[s] DNA from the person who actually [committed] each robbery, which is inaccessible to Mr. Quinones by other reasonably available means." (Def. Reply at 3). Although Quinones has not shown that the evidence is exculpatory, the court agrees that DNA evidence obtained from the three sets of swabs could at least potentially be exonerating.

██ Where, as here, the court considers evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," then "the failure to preserve potentially useful evidence does not constitute a denial of due process of law" unless Quinones "can show bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Courts generally hold that the Government does not act in bad faith when it consumes genetic material for testing, so long as it has a scientific reason for doing so. *See, e.g.,* Order, *United States v. Burns*, Case No. 16–cr–23–1 (ABJ) (Sept. 9, 2016); *United States v. Anderson*, 169 F.Supp.3d 60, 64 (D.D.C. 2016); *United States v. Haight*, 153 F.Supp.3d 240, 241 (D.D.C. 2016) (citing additional cases). The court agrees with the majority of other district judges in this Circuit to consider the issue, and finds that the Government has set forth sufficient scientific evidence and justification for consuming the collected genetic material, and this consumption would not be in bad faith. In particular, the sworn statement of Dr. Bruce Budowle, provided by the Government, stated that "the most scientifically sound approach is to extract all of the DNA on low quantity DNA samples to maximize the possibility of obtaining probative DNA information that can be used by both parties." (Gov't Resp. at 3). While Quinones offers his own expert testimony to support his argument that splitting the swab samples is a scientifically sound alternative (*see* Decl. of Marc Taylor (ECF No. 5–1)), Dr. Budowle asserts that dividing the swabs in half ahead of testing "can and will reduce the chances of obtaining DNA typing results that could inculpate but just as importantly exculpate individuals as the source of the evidentiary materials" (Decl. of Dr. Budowle ¶ 4 (ECF No. 4–2)).[1] Given these competing declarations,

1. In two separate cases, the D.C. Superior Court granted defendants' request for the same pre-extraction splitting protocol that Quinones requests here. *See United States v. Smith*, 2015 CF3 7541 (D.C. Sup. Ct. Sept. 9, 2015); *United States v. Green*, 2013 CF2 4489 (D.C. Sup. Ct. Feb. 14, 2014). However, in both cases the court ordered the swabs to be

the court need not wade into the scientific debate, but instead finds simply that the Government's expert supports a finding that there would be no bad faith in consuming the entirety of the sample. Therefore, the court finds that under these specific circumstances the Due Process Clause does not require the Government to preserve genetic evidence.

 Quinones next argues that Federal Rule of Criminal Procedure 16 "requires that the defense be provided with an opportunity to conduct independent examination of material for the presence of biological evidence, and the ability to examine requires preservation of biological material whenever possible so that independent testing may be conducted." (Def. Mot. at 3). Rule 16(a)(1)(E) states:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). The court is not convinced that the three sets of collected swabs are "tangible objects" governed by this rule; instead, the court understands the "tangible objects" to be the seized clothes, items in the Lexis automobile, and items at the crime scene. The swabs are simply the tools used to collect potential genetic material from the surface of the tangible objects during the collection of evidence. Even if the swabs, or any

genetic material on the swabs, were "tangible objects" under Rule 16, there is no basis at this stage to conclude that the swabs or genetic material would be "material to preparing the defense," the Government "intends to use the [swabs] in its case-in-chief at trial," or the genetic material "was obtained from or belongs to" Quinones. Therefore, the court concludes that Rule 16 also does not require the Government to provide Quinones with a portion of the collected swabs. However, the court notes that denial of this motion does not foreclose the possibility that Quinones may still have the opportunity to retain an independent expert to test the collected genetic material if some amount remains after the Government's testing. (*See* Gov't Resp. at 2–3).

## III. CONCLUSION

For the foregoing reasons, Quinones' motion to compel the Government to preserve evidence is DENIED.

---

split with the caveat that if the Government's sample was insufficient, it could use the remaining half. In the court's view, this con-

cedes the issue that the Government may use the entirety of the sample.